STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. TONI TAYLOR AND 613 ADULT BOOKSTORE, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 26, 1976—Decided July 16, 1976.

Before Judges FRITZ, SEIDMAN and MILMED.

*Mr. John McFeeley, III,* Assistant Prosecutor, argued the cause for appellant (*Mr. Thomas J. Shusted,* Camden County Prosecutor, attorney).

*Ms. Susan W. Sciacca,* Deputy Attorney General, argued the cause on behalf of *Mr. William F. Hyland,* Attorney General of New Jersey, *amicus curiae* (*Mr. Frederick S. Cohen,* Deputy Attorney General, of counsel and on the brief).

*Mr. Robert Edward Levy* argued the cause for respondents.

PER CURIAM. Pursuant to a search warrant obtained by an investigator of the Camden County Prosecutor's office, a large quantity of allegedly obscene films was seized on March 7, 1975 at defendants' bookstore in Mt. Ephraim. Subsequently, defendant Toni Taylor and two others were indicted for uttering or possessing with intent to sell or selling to another seven separately titled films, in violation of *N. J. S. A.* 2A:115-2.[1]

Defendants moved under *R.* 3:5-7 to suppress the evidence and for the return of all the films. The motion was denied, but the trial judge reserved for further argument the question of whether duplicates of the seized films should be returned.[2] Following such argument an order was entered "that all duplicate copies of the films seized are to be returned to defendants," and that "the court will not

---

[1] The record before us does not explain clearly why only seven films were listed in the indictment, when more than 300 reels (including duplicates) were seized.

[2] It is not clear whether the indictment filed May 2, 1975 was returned before or after argument on the suppression motion. In any event, a copy seems to have come into the possession of defense counsel shortly before June 27, 1975, the date on which the court heard the reserved issue of the return of duplicate films.

conduct an adversary hearing as to the obscenity of the duplicate films" prior to their return. Twenty-eight films were listed in the order, which also stayed the return "until August 21, 1975, pending timely filing of a Notice of Appeal by the Prosecutor and final disposition of that appeal."

The State moved for leave to appeal. We reserved decision and remanded the matter to the trial judge, sitting without a jury, for a hearing

\* \* \* for the sole purpose of a prima facie determination of obscenity *vel non* with respect to the films which are the subject of the challenged action \* \* \* [s]uch hearing \* \* \* shall be commenced within seven days after receipt of this order by the parties, and concluded as expeditiously as possible. \* \* \* \*

The trial judge, in the presence of both counsel,[3] viewed 82 films.[4] He found, applying "the three pronged test set forth in Miller versus California [413 *U. S.* 15, 24, 93 *S. Ct.* 2607, 2615, 37 *L. Ed.* 2d 419 (1973)],"[5] that the films were "prima facie obscene." Pursuant to his direction, a transcript of his findings was forwarded to us. We granted the State's motion for leave to appeal without, however, "divest[ing] the trial court of its jurisdiction to proceed with any extant

---

[3]The procedure, to which neither counsel objected, consisted of the viewing of the films over a five-day period, followed by a verbal description of each by the trial judge and his conclusion as to their obscenity.

[4]We cannot tell from the record whether the total number of films in question consisted of 82 separate titles plus duplicate reels thereof, but we assume that this was the case.

[5]The basic guidelines for the trier of fact set forth in *Miller v. California, supra,* are whether (a) "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. See *State v. De Santis,* 65 *N. J.* 462, 474 (1974).

criminal action." At our invitation the Attorney General submitted a brief *amicus curiae*. We would be remiss if we did not at this point express to the Attorney General and the Chief of the Division of Criminal justice our appreciation of their excellent cooperation.

The thrust of the prosecutor's argument on this appeal is that "the films sought to be returned have been found to be prima facie obscene and are, therefore, contraband in violation of *N. J. S. A.* 115-2 [*sic;* obviously, 2A:115-2]," and that they are subject to lawful detention under *R.* 3:5-7(b). *State v. Shapiro,* 122 *N. J. Super.* 409 (Law Div. 1973), is cited in support. The *amicus curiae* brief urges that (1) an adversary hearing was not required prior to the seizure of the film; (2) no such right existed where, as here, allegedly obscene materials are seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution; and (3) the films, "as per the dicta of *Heller* [*Heller v. New York,* 413 *U. S.* 483, 93 *S. Ct.* 2789, 37 *L. Ed.* 2d 745 (1973)]," need not be returned.[6]

Defendants contend that (1) retention of the duplicates *pendente lite* is an unlawful prior restraint, and that there can be no mass seizure without a prior judicial hearing to determine probable cause; (2) if the evidence is to be preserved, then provision is to be made "for the making of copies so that circulation and distribution will not be impeded during the period awaiting a final judicial determina-

---

[6] In a supplemental letter, the Attorney General, consistent with his stated policy of opposing mass seizures, questioned the validity of the seizure here "of several hundred films from the defendant, including numerous duplicates." However, it must be pointed out that the trial judge denied defendant's motion to suppress. Whether his decision was correct is not before us on this appeal, in which the States seeks a review and reversal of the trial judge's order to return to defendants the duplicate reels of film. Defendants did not seek leave to cross appeal from the order denying their motion to suppress. See *R.* 2:2-4, *R.* 2:5-6(b). The Attorney General argued further, however, that "the illegal activity undertaken by the State does not require the return of materials adjudicated contraband."

tion;" (3) *State v. Shapiro, supra,* has been overruled by *Heller v. New York, supra,* and if the State's objective "is to destroy all of the distributor's files, however, or to enjoin their distribution, thereby totally abridging the given work's circulation, a pre-seizure determination of obscenity is constitutionally required"; (4) in an obscenity prosecution the State has the burden of proof "for a final lawful restraint"; (5) return of the duplicates is "mandated" by *State v. Osborne,* 117 *N. J. Super.* 409 (App. Div. 1971), certif. den. 60 *N. J.* 139 (1972), and the State "must return all duplicates and all material that is not to be used as evidence in any criminal prosecution," and (6) the "Issuing authority allowed investigating officer to ad hoc determination [*sic*] of obscenity."

We deem it advisable at the outset to state our firm intention to decide only the narrow issue before us: The correctness of the order under review. As we indicated earlier in a footnote, we shall not address ourselves to the validity of the search and seizure or to any issues of mass seizure or prior restraint. Apart from the failure of defendants to present those questions by way of cross-appeal, we perceive no reason to consider them on our own motion on the record before us. Defendants have not supplied us with a transcript of the suppression motion, nor with any record of the search and seizure proceedings.

Nor do we deem it necessary to determine whether the films in question could be retained as "contraband." We consider the issue irrelevant here. While both the prosecutor and the Attorney General place reliance on *State v. Shapiro, supra,* it is to be noted that the proceedings there were on a motion under *R.* 3:5–7(b) seeking the return of allegedly obscene publications *found to have been illegally seized,* thus involving the issue of whether the property was "otherwise subject to lawful detention." We are, of course, not bound by the determination in that case. But, in any event, we need express no opinion on the correctness of the legal

principles enunciated in *State v. Shapiro.*[7] Since the trial
judge in the matter before us concluded that the films had
been seized legally, he was not required, nor are we, to make
a further determination of whether defendants were entitled
under *R.* 3:5–7(b) to the return of the films, or whether, on
a motion for return of the seized items *under that rule,*
the property was "otherwise subject to lawful detention."

Beyond this, we are of the view that neither *Heller v. New
York,* nor *State v. Osborne, supra,* is applicable to this case.
The films in question were not subjected to any form of
"final restraint," in the sense of being enjoined from exhibi-
tion or threatened with destruction. See *Heller v. New York,
supra,* 413 *U. S.* at 490, 93 *S. Ct.* 2789. The court in *Heller*
carefully pointed out, moreover, that there is no absolute
right to a prior adversary hearing where allegedly obscene ma-
terial is seized, pursuant to a warrant, to preserve the material
as evidence in a criminal prosecution. *Id.* at 488, 93 *S. Ct.*
2789. But the films here were determined to be "prima
facie" obscene at the hearing we ordered (and defense counsel
acknowledged at oral argument that the trial judge responded
to our mandate and that no objection was voiced to the pro-
cedure employed). The trial judge's vivid description of the
films he viewed fully supports the conclusion he reached.
*State v. Johnson,* 42 *N. J.* 146, 162 (1964).

Defendants argued less at the hearing below than they do on
this appeal. Their counsel noted then his intent to file an-
other motion for the return of all the films other than those
listed in the indictment, contending that they were "not being
used for evidentiary purposes and therefore constitute an
immediate prior restraint upon their distribution." As for
the duplicates, his contention was that the prosecutor "seems

---

[7]But obscene films, pictures, books, etc., are not *per se* contraband.
*State v. Muldowney,* 60 *N. J.* 594, 602 (1972). *Cf. A Quantity of
Books v. Kansas,* 378 *U. S.* 205, 211–212, 84 *S. Ct.* 1723, 12 *L. Ed.*
2d 809 (1964); *Marcus v. Search Warrants of Property,* 367 *U. S.*
717, 730, 81 *S. Ct.* 1708, 6 *L. Ed.* 2d 1127 (1961).

to feel that he can grab everything that isn't nailed down and make copies and come back in and grab everything that isn't nailed, then he'll let us make copies." The State's position was that all the films "are relevant to our case to show possession with intent to distribute or utter and also scienter on the part of the individual defendants, and I think the volume alone goes to both of these questions." The trial judge said:

I am going to grant your motion, Mr. Levy. I feel that the First Amendment requires that where there has been a seizure and the Prosecutor has had sufficient time to determine that the copies that he has seized are exact duplications of a particular film that he can keep for evidence or of course, if it's the single copy subject to your making copies, but that where there has not been any determination other than the probable cause or [sic] its seizure, there hasn't been any plenary hearing and adversary proceeding determining obscenity. That once he's satisfied himself, that the copies are exact duplicates, that he has to return them.

 The trial judge's concept of *Heller v. New York,* *supra,* was that "until there has been a determination of obscenity on a particular film, * * * the owner of the film is entitled to duplicates," and he declined to hold a pretrial hearing on the issue of obscenity. We do not find any such requirement in *Heller,* which, it is to be noted, involved the seizure at a commercial movie theater, pursuant to a search warrant, of an allegedly obscene film. The *Heller* court differentiated this type of situation from that in *Quantity of Copies of Books v. Kansas* and *Marcus v. Search Warrants of Property, supra,* which concerned the seizure of large quantities of books for the sole purpose of their destruction. In such case, the court said, "a prior judicial determination of obscenity in an adversary proceeding was required to avoid 'danger of abridgement of the right of the public in a free society to unobstructed circulation of nonobscene books.'"

But seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a

criminal proceeding, particularly where, as here, there is no show-
ing or pretrial claim that the seizure of the copy prevented continuing
exhibition of the film. If such a seizure is pursuant to a warrant,
issued after a determination of probable cause by a neutral magis-
trate, and, following the seizure, a prompt judicial determination of
the obscenity issue in an adversary proceeding is available at the
request of any interested party, the seizure is constitutionally per-
missible. In addition, on a showing to the trial court that other
copies of the film are not available to the exhibitor, the court should
permit the seized film to be copied so that showing can be continued
pending a judicial determination of the obscenity issue in an ad-
versary proceeding. Otherwise, the film must be returned. [413 *U. S.*
at 492–493, 93 S. Ct. at 2794–2795.]

■ It has not been demonstrated here, nor did the trial
judge hold, that the films were seized for any purpose other
than to preserve them as evidence in a criminal proceeding
for the alleged violation of *N. J. S. A.* 2A:115–2.[8] And the
evidential relevancy of the films is not disputed. See *State v.
Hudson Cty. News Co.,* 41 *N. J.* 247, 257–259 (1963). The
volume and contents of the material seized are clearly per-
tinent both to defendants' knowledge thereof [*scienter*] and
to their possession of the same with the intent "to utter or
expose to the view or hearing of another," or "to sell, import,
print, publish * * * or offer for sale." Furthermore, there
was no showing to the trial court (indeed, the point was not
raised below) that other prints of the films in question were
not readily available. *Cf. State v. Osborne, supra,* 117
*N. J. Super.* at 413.

In short, on the particular facts here present, as we gather
them from the record before us, we discern no valid basis
for the order directing the return to defendants of the dupli-
cate films.

It is, accordingly, reversed.

---

[8]There is no contention here that the seizure was on a warrant
issued pursuant to *N. J. S. A.* 2A:152–5; and, obviously, the case
does not involve an order for the seizure and destruction of obscene
materials issued in a proceeding for injunctive relief under *N. J.
S. A.* 2A:115–3, 5 *et seq.*